IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LINO PAUL, )<br><br>Plaintiff, )<br><br>v. )<br><br>WINCO HOLDINGS, INC.<br>(dba WINCO FOODS, INC.); BILL LONG;<br>ROGER COCHELL; KATHY<br>SCHORZMAN; PEGGY DRESCHER;<br>MARY GARCIA; SANDEE WADDCUPS;<br>JANELLE WOESSNER; CHARLIE<br>WILSON; LORRAINE BEESON; and<br>various JOHN AND JANE DOES (either<br>officers, agents or representatives of a<br>Winco Store Employee Association, or of<br>an Employee Association Representative<br>Committee, or both); and THE WINCO<br>STORE EMPLOYEE ASSOCIATIONS,<br><br>Defendants. | CASE NO.  CV 02-381-S-EJL-MHW<br><br><br>**MEMORANDUM DECISION AND ORDER** |

On December 10, 2007, WinCo Foods, Inc. (now known as WinCo Holdings, Inc.)

("WinCo"), Bill Long, Roger Cochell, Kathy Schorzman, and Lorraine Beeson (collectively,

"WinCo Defendants") filed a motion for protective order relating to the depositions of WinCo

Defendants' noticed by Plaintiff Lino Paul ("Plaintiff").  WinCo Defs.' Mot. Protective Order,

Docket No. 181.  WinCo Defendants generally allege that Plaintiff's notice of deposition was

filed too late, and that the discovery requests are overly broad and unduly burdensome.

**Memorandum Decision and Order - Page 1**

Defendants Peggy Drescher, Mary Garcia, Sandee Waddoups, Janelle Woessner, Charlie Wilson and WinCo Store No. 1 Employee Association (collectively, "Employee Association Defendants") adopted and joined WinCo Defendants' motion for protective order on the same day.  Employee Defs.' Joinder Mot. Protective Order, Docket No. 182.  Also, Employee Association Defendants filed their own motion for protective order arguing that Plaintiff's discovery requests directed to them raised the same issues as asserted by the WinCo Defendants. Employee Defs.' Mot. Protective Order, Docket No. 183.

In response, Plaintiff moved for a protective order on his responses to WinCo Defendants' and Employee Association Defendants' (collectively, "Defendants") written discovery until the completion of their noticed depositions.  Pl.'s Mot. Protective Order, Docket No. 187.

In a separate issue, WinCo Defendants filed a motion to strike Plaintiff's expert witness disclosure on November 8, 2007.  WinCo Defs.' Mot. Strike Pl.'s Expert, Docket No. 173.  Their motion was in response to Plaintiff's disclosure of his counsel, Michael B. Schwarzkopf, as his expert witness.  WinCo Defs.' Supplement to Mot. Strike Pl.'s Expert, Docket No. 177.  WinCo Defendants argue that Plaintiff's counsel cannot appear both as advocate and as an expert in this case. WinCo Defs.' Mot. Strike Pl.'s Expert, at 4-5, Docket No. 173.  Employee Association Defendants have adopted and joined WinCo Defendants' motion to strike.  Employee Defs.' Joinder Mot. Strike Pl.'s Expert, Docket No. 174.

## I.
## Background.

**A.**   **Discovery issues.**

Plaintiff, who identifies himself as a Sudanese black male, was employed by WinCo from

April 30, 1999 until he was terminated on December 27, 2001.  WinCo Defs.' Mem. Supp. Mot.

Protective Order, at 2, Docket No. 181-2.  His employment with WinCo was limited to WinCo

Store No. 1, which opened on October 5, 1998.  *Id*. at 11, 15.  Plaintiff was terminated shortly

after he sold beer to a customer on December 27, 2001.  The sale occurred a few minutes prior to

6:00 a.m., the time mandated by the State of Idaho for the start of alcohol sales.  In response to

his termination, Plaintiff pursued an internal grievance with WinCo Store No. 1 Employee

Association until January 18, 2002.  *Id*. at 15.  Achieving no results from his grievance process,

Plaintiff filed the present action on August 15, 2002.

The Hourly Employee Working Conditions & Wages Agreement ("Employee

Agreement")[1] controlled Plaintiff's internal grievance regarding his termination.  WinCo Defs.'

Mem. Supp. Mot. Dismiss, at 47-50, Docket No. 47, Ex. A.  It was ratified by WinCo and the

Employee Association on April 20, 2000 with an expiration date of February 7, 2004.  *Id*. at 54.

Plaintiff's Second Amended Complaint, filed on July 17, 2007, generally alleges the

following: Employee Association Defendants breached their fiduciary duties to Plaintiff, or

otherwise caused him harm, by violating 29 U.S.C. §§ 411, 415, and 501 of the Labor-

Management Reporting and Disclosures Act ("LMRDA"), 29 U.S.C. § 401, *et seq*.; Employee

Association Defendants breached their state common law fiduciary duty to Plaintiff; WinCo

Defendants knowingly assisted Employee Association Defendants in the breach of fiduciary

duties to Plaintiff; Defendants violated 29 U.S.C. § 186 giving rise to several causes of action

under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et*

---

[1]  Based on representations by Plaintiff's counsel at the hearing dated January 31, 2008, the Court understands that the Employee Agreement was the first such agreement at WinCo Store No. 1.

**Memorandum Decision and Order - Page 3**

*seq.*; and Defendants violated Plaintiff's civil rights under 42 U.S.C. §§ 1981 and 1985.[2]  *See*

Second Am. Compl., Docket No. 165-2.

WinCo Defendants move the Court to limit the scope of Plaintiff's discovery based on the

following standing arguments: (1) Plaintiff may only assert claims on his own behalf because the

Court denied his motion to certify class action;[3] (2) Plaintiff lacks Article III constitutional

standing to assert claims on behalf of other store employees; (3) Plaintiff lacks standing to assert

a LMRDA claim, under 29 U.S.C. § 501, on behalf of any employee association other than the

Employee Association at Store No. 1, and then only for the period for which he was an employee

of WinCo Store No. 1; (4) Plaintiff has standing to assert a RICO claim, under 29 U.S.C. § 1962,

only where he can show that he has been injured in his business or property by Defendants'

conduct constituting a violation, which would be limited to acts taking place at WinCo Store No.

1 during the period that it employed Plaintiff; (5) Plaintiff only has standing to assert a claim for

Defendants' breach of fiduciary duty individually; and (6) Plaintiff only has standing to assert a

civil rights claim, under 42 U.S.C. §§ 1981 and 1985, in his individual capacity.  WinCo Defs.'

Mem. Supp. Mot. Protective Order, at 11-14, Docket No. 181-2.

WinCo Defendants also request that Plaintiff not be allowed to take the deposition of Bill

Long, or Roger Cochell.  WinCo Defs.' Mem. Supp. Mot. Protective Order, at 27, Docket No.

181-2.  Mr. Long is WinCo's former President and Chief Executive Officer and currently retains

the title of Chairman.  *Id.*, n.11.  Mr. Cochell is WinCo's former Vice President of Labor and

---

[2]  The District Court's dismissal of Count 15 of Plaintiff's Complaint was not appealed or reversed by the Ninth Circuit.  Ninth Circuit Mem., Docket No. 125.  Thus, Plaintiff's civil rights claims are limited to Count 16 of his Second Amended Complaint which alleges that WinCo Defendants' termination of him violated 42 U.S.C. § 1981.  Second Am. Compl., ¶¶ 202-04, Docket No. 165-2.

[3]  This Court denied Plaintiff's motion to certify a class action on March 29, 2007.  *See* Mem. Order, Docket No. 161.

**Memorandum Decision and Order - Page 4**

Human Resources having retired in 2006.  *Id.*  His signature also appears on the Employee

Agreement as WinCo's representative.  WinCo Defs.' Mem. Supp. Mot. Dismiss, at 54, Docket

No. 47, Ex. A. WinCo Defendants argue that Plaintiff served notice on Messrs. Long and

Cochell too late in the discovery process to allow their depositions.  *Id.* at 27.

Employee Association Defendants have joined WinCo Defendants' motion for protective

order.  *See* Employee Defs.' Joinder Mot. Protective Order, Docket No. 182.  They also move for

their own protective order and assert that Plaintiff's discovery concerning his LMRDA claims,

under 29 U.S.C. §§ 411 and 415, should be limited to the time frame that he was a member of the

Employee Association.  Employee Defs.' Mem. Supp. Mot. Protective Order, at 9-10, Docket

No. 183-4.  They argue Plaintiff's membership began when he started working at WinCo Store

No. 1, and ended on January 18, 2002 when he ceased pursuing his internal grievance with the

Employee Association.  *Id.*

Plaintiff moves the Court for a protective order because he claims that Defendants have

not appeared for scheduled depositions in bad faith.  Pl.'s Mot. Protective Order, at 2, Docket No.

187.  Further, he argues that he will be prejudiced if required to respond to Defendants' written

discovery requests before the Court rules on Defendants' motions for protective order.  *Id.*

**B.**   **Plaintiff's counsel as his expert witness.**

On October 14, 2007, Plaintiff disclosed his counsel, Michael B. Schwarzkopf, as his

expert witness.  WinCo Defs.' Supplement to Mot. Strike Pl.'s Expert, Docket No. 177.  WinCo

Defendants filed a motion to strike Plaintiff's expert witness disclosure on November 8, 2007.

WinCo Defs.' Mot. Strike Pl.'s Expert, Docket No. 173.  The primary assertion is that Plaintiff's

counsel cannot appear both as advocate and as an expert witness in this case. WinCo Defs.' Mot.

**Memorandum Decision and Order - Page 5**

Strike Pl.'s Expert, at 4-5, Docket No. 173.  Employee Association Defendants joined WinCo

Defendants' motion to strike on the same day.  Employee Defs.' Joinder Mot. Strike Pl.'s Expert,

Docket No. 174.

Because of Plaintiff's allegedly improper disclosure, Defendants seek an extension of

time to disclose their own experts.  Employee Defs.' Mot. Extend Time, Docket No. 175.  They

have requested that disclosure of their experts be extended for 30 days after the Court rules on its

motion to strike.  *Id*. at 2.

**II.**
**Discovery Issues.**

Defendants' motions for protective orders raise various general and specific issues

concerning Plaintiff's proposed discovery.  *See generally* WinCo Defs.' Mem. Supp. Mot.

Protective Order, Docket No. 181-2; Employee Defs.' Mem. Supp. Mot. Protective Order,

Docket No. 183-4.  After reviewing the parties' memorandums and oral arguments, the Court has

determined that the following guidance sufficiently address the parties' contentions.

**A.**   **<u>Geographic and temporal scope of Plaintiff's discovery.</u>**

Unless limited by court order, "[p]arties  may obtain discovery regarding any matter, not

privileged, that is relevant to the claim or defense of either party."  Fed. R. Civ. P 26(b)(1).  In

response to a party's motion for a protective order, "[t]he court may, for good cause, issue an

order to protect a party or person form annoyance, embarrassment, oppression, or undue burden

or expense, . . . [and] forbidding inquiry into certain matters, or limiting the scope of disclosure

or discovery to certain matters."  Fed. R. Civ. P 26(c)(1) (alteration in original).  The movant

must show, however, that the issuance of the protective order is necessary, which requires a

"particular and specific demonstration of fact as distinguished from stereotyped and conclusory

statements." *In re: Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garret*, 571 F.2d 1323, 1326, n.3 (5th Cir. 1978)); *see also Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) (party seeking protection bears burden of showing specific prejudice or harm will result if no protective order is granted).

Defendants argue that Plaintiff's discovery is only relevant if limited geographically to matters concerning WinCo Store No. 1, the Employee Association, and the collective bargaining agreements negotiated between WinCo and the Employee Association. *See* WinCo Defs.' Mem. Supp. Mot. Protective Order, at 15, Docket No. 181-2. They contend that Plaintiff's standing to bring claims against them is limited to WinCo Store No. 1 because he only worked at that store, and was only a member of the Employee Association at that store. *Id*. at 14. Although they allege that Plaintiff's discovery is only relevant to his period of employment, Defendants have offered to extend the time frame of Plaintiff's discovery to run from the date WinCo Store No. 1 opened, October 5, 1998, to the date that Plaintiff stopped pursuing his grievance internally, January 18, 2002. *Id*. at 15. Plaintiff's general claims are addressed separately because the scope of relevant discovery varies depending on which claim is involved

    (1)    <u>Plaintiff's RICO claims</u>.

RICO violations under 18 U.S.C. § 1962 apply to any person:

> who uses or invests income derived from a *pattern of racketeering activity* to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise through a *pattern of racketeering activity,* § 1962(b); who being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs through a *pattern of racketeering activity*, § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232-33 (1989)

**Memorandum Decision and Order - Page 7**

(internal quotations omitted) (emphasis added).

Plaintiff's RICO claims against Defendants are based on their alleged violations of 29 U.S.C. § 186. Second Am. Compl., at 21-43, Docket No. 165-2. Violations of § 186 are expressly included in the RICO definition of "racketeering activity." *See* 18 U.S.C. § 1961(1)(C). Civil remedies under RICO, however, are only available to claimants who have been injured in their business or property by reason of another parties' 18 U.S.C. § 1962 violation. 18 U.S.C. § 1964(c). Even assuming that Plaintiff sustained injury to his business or property, the Court must still address whether his proposed discovery is relevant to his injury by reason of Defendants' alleged § 186 violations.

Standing to bring a RICO civil action requires that the claimant "allege that it suffered an injury to its business or property, . . . as a *proximate result* of the alleged racketeering activity." *Newcal Indus., Inc. v. Ikon Office Solution*, --- F.3d ----, 2008 WL 185520, at *12 (9th Cir. 2008) (internal citations omitted) (emphasis added); *see also Anza v. Ideal Steel Supply Co.*, 126 S.Ct. 1991, 1994 (2006) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (holding that a private right of action under RICO requires that the alleged violation was the *proximate cause* of the plaintiff's injury)).

The central question a court must ask when evaluating a RICO claim is "whether the alleged violation led directly to the plaintiff's injuries." *Anza*, 126 S.Ct. at 1998. Plaintiff's involvement with Employee Association Defendants derives from his membership in the Employee Association. Because Employee Association Defendants negotiated with WinCo concerning the Employee Agreement at WinCo Store No. 1, Plaintiff's discovery regarding their alleged § 186 violations could be relevant, or likely to lead to relevant evidence, from October 5,

1998, when WinCo Store No. 1 opened.  As noted earlier, the Employee Association was first

ratified on April 20, 2000.  *See supra* n.1.  So, allowing discovery to go back another 18 months

would allow Plaintiff to conduct discovery on his theory that it was illegally formed and

dominated by WinCo Defendants.

Plaintiff's RICO discovery directed to the Employee Association Defendants is limited to

matters concerning Defendants' alleged § 186 violations relating to WinCo Store No. 1.  Plaintiff

ceased his intra-union grievance process with the Employee Association after it issued a decision

concerning his termination grievance on January 18, 2002.  *See* Second Am. Compl., at 7-9,

Docket No. 165-2.  As Plaintiff was no longer pursuing his remedies through the Employee

Agreement, the Court finds that any § 186 violations by Defendants after this date could not

have led directly to his alleged injuries.  Thus, Plaintiff's discovery concerning the Employee

Association Defendants' alleged § 186 violations is only relevant to events occurring prior to

January 18, 2002.

Plaintiff, however, contends that his discovery to WinCo Defendants seeks to establish

that their conduct has constituted a pattern of § 186 violations on a chain-wide basis.  *See* Pl.'s

Resp. to WinCo Defs.' Mot., at 9-11, Docket No. 195.  Plaintiff argues that in order to establish a

pattern of racketeering activity he needs to examine WinCo's conduct on a chain-wide basis.  *See*

18 U.S.C. § 1962; *H.J. Inc.,* 492 U.S. at 232-33.  To constitute a pattern, there must be at least

two acts of racketeering activity within ten years of one another.  *Turner v. Cook*, 362 F.3d 1219,

1229 (9th Cir. 2004) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237-38

(1989)).  Also, the claimant must prove: (1) that the racketeering predicates are related; and (2)

that they amount to, or pose a threat of, continued criminal activity.  *Id*.  Thus, evidence that

**Memorandum Decision and Order - Page 9**

WinCo Defendants violated § 186 at other WinCo stores prior to January 18, 2002 may be relevant establishing that they engaged in a pattern of racketeering activity.  Because this discovery may be relevant, the Court will examine in more detail whether Plaintiff could have sustained injury by reason of WinCo's alleged § 186 violations at other WinCo stores.

In the Ninth Circuit, the following factors are relevant to whether a plaintiff can show proximate cause:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Newcal*, 2008 WL 185520, at *12 (9th Cir. 2008) (quoting *Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001)).  In fact, proximate cause is defeated by the existence of more-direct victims who can be counted on to vindicate the law as private attorneys general.  *Id.*  Plaintiff's discovery seeks information concerning WinCo Defendants' dealings with the employee associations at all WinCo stores.  His relationship with Defendants, however, arises from his employment at WinCo Store No. 1 and his membership in the Employment Association.  Thus, even if WinCo Defendants violated § 186 at another WinCo store, that store's employees would be more direct victims than Plaintiff.

Therefore, the Court is going to adopt a two-tier approach to Plaintiff's discovery regarding his RICO claims against WinCo Defendants.  Plaintiff will be allowed to pursue discovery against WinCo Defendants regarding their alleged § 186 violations at WinCo Store No. 1 prior to January 18, 2002.  If Plaintiff can establish any merit to his assertions of WinCo Defendants' RICO violations during this time frame, and if he can show that RICO predicate acts

**Memorandum Decision and Order - Page 10**

may be prevalent chain-wide, then the scope of discovery may be expanded upon proper application. *See Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995) (acknowledging that district courts have discretion for modification of a protective order).

        (2)    <u>Plaintiff's civil rights claims</u>.

Although Counts 15 and 16 of Plaintiff's Second Amended Complaint were dismissed by the District Court, dismissal of Count 15 was never appealed and the Ninth Circuit Court of Appeals only reversed the dismissal of Count 16. *See* Ninth Circuit Mem., Docket No. 125. Thus, Plaintiff's discovery concerning any alleged civil rights violations by Defendants is limited to his 42 U.S.C. § 1981 claim that the WinCo Defendants terminated him based on his race, color, national origin, alienage, ethnic character, and/or ancestry, when it treated white, American born citizens more favorably. Second Am. Compl., ¶¶ 202-04, Docket No. 165-2.

This Court has previously addressed the issue of whether to grant a defendant's motion for protective order prohibiting discovery of "comparables" in an action where the plaintiff claimed that he was terminated in violation of public policy. *Purkey v. Rubino*, 2006 WL 3497267 at * 6. In *Purkey*, this Court granted the defendants' motion for protective order because the plaintiff did not have to prove disparate treatment by comparison with similarly situated employees. *Id*. In this case, however, Plaintiff claims that a white woman, who was allegedly involved in the incident which led to his termination, was not disciplined for advising Plaintiff that he could sell the alcohol, while Plaintiff, a black male, was disciplined. Second Am. Compl., ¶¶ 14-19, Docket No. 165-2. As explained below, Plaintiff's discovery concerning similarly situated employees may be relevant to his § 1981 claim.

**Memorandum Decision and Order - Page 11**

The Ninth Circuit has held that employment discrimination claims brought under § 1981 follow the same legal principles as those applicable in Title VII disparate treatment cases. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004).  To prove employment discrimination under either, the claimant must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) *similarly situated individuals outside his protected class were treated more favorably*, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."  *Id*. at 847 (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004) (emphasis added)).  To prove the fourth element, a claimant must show, at the least, that the employees that were treated more favorably were similarly situated to claimant in all material respects.  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).

This Court has noted that "[e]ven in Title VII cases and other employment discrimination cases, courts have not given unfettered access to personnel records."  *Purkey*, 2006 WL 3497267 at * 6 (*citing Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (upholding denial of employee's broad discovery request for information on all promotions extending back five years before the policy of which he complained was implemented, noting it was a broad and largely irrelevant discovery request)); *Sallis v. Univ. of Minn.*, 408 F.3d 470, 477-78 (8th Cir. 2005) (university employee's request for information on every allegation of employment discrimination against university, by all complainants in all departments, was overly broad and unduly burdensome in Title VII action).  In dictum, this Court held that the party seeking production of "comparable" documents must show that the information is relevant and that the relevant information cannot be obtained by less intrusive means.  *Id*.

**Memorandum Decision and Order - Page 12**

Plaintiff's allegation that a white, female employee was not disciplined for her involvement in the sale of the alcohol raises both gender and racial discrimination claims. *See* Second Am. Compl., ¶¶ 14-19, Docket No. 165-2. The Court finds that WinCo Defendants' treatment of any employees who have illegally sold alcohol at WinCo Store No. 1 may be relevant to Plaintiff's § 1981 claim. Thus, Plaintiff is entitled to discovery concerning WinCo Defendants' treatment of WinCo Store No. 1 employees who illegally sold alcohol from October 5, 1998 to the date of the filing of this action.

(3)   Plaintiff's LMRDA and common law fiduciary duty claims.

Defendants argue that Plaintiff's discovery regarding his LMRDA claims should be limited to the period of time that he was a "member" of the Employee Association. *See* Employee Defs.' Mem. Supp. Mot. Protective Order, at 10-11, Docket No. 183-4; WinCo Defs.' Mem. Supp. Mot. Protective Order, at 12, Docket No. 181-2. They allege that Plaintiff's membership with the Employee Association began when he started working at WinCo Store No. 1 and ended when he ceased pursuing his internal grievance on January 18, 2002. *Id.*

(a)   Plaintiff's membership status in the Employee Association.

The LMRDA defines member, or member of good standing, of a labor organization as "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402(o). Persons who have fulfilled the requirements of union membership are members under the LMRDA even if the labor organization doesn't recognize their membership. *Brennan v. Local 357, Int'l. Bhd. of*

*Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 709 F.2d 611, 614 (9th Cir. 1983). Where an individual has not complied with the labor organization's membership requirements, however, that individual may not obtain relief under the LMRDA.  *Id*.

All parties agree that Plaintiff's employment at WinCo Store No. 1 as a non-supervisory employee was the only requirement that he had to meet to become a member of the Employee Association.  *See* Pl.'s Resp. to Employee Defs.' Mot., at 8-9, Docket No. 194; Pl.'s Resp. to WinCo Defs.' Mot., at 7, Docket No. 195; WinCo Defs.' Reply to Pl.'s Resp., at 1-2, Docket No. 211; Employee Defs.' Reply to Pl.'s Resp., at 3, Docket No. 213; *see also* WinCo Defs.' Mem. Supp. Mot. Dismiss, at 47, Docket No. 47, Ex. A ("WinCo recognizes this specific store Employee Association as the collective bargaining representative for the purpose of establishing wages, hours and conditions of employment *for all non-management employees*.") (emphasis added).  Thus, Plaintiff met the Employee Association's requirements for membership when he started working as a non-supervisory employee at WinCo Store No. 1.

The Ninth Circuit has held that membership, as defined by the LMRDA, continues "until one of two events occurs: (1) the member voluntarily withdraws from the union, or (2) the union expels or suspends the member after appropriate proceedings held pursuant to lawful constitutional or bylaw provisions." *Brennan*, 709 F.2d at 615.  Defendants argue that Plaintiff's membership in the Employee Association ceased when he was terminated, or at the latest, when he failed to exhaust the Employee Associations internal grievance process after his hearing on January 18, 2002.  Employee Defs.' Mem. Supp. Mot. Protective Order, at 10 n.7, Docket No. 183-4; WinCo Defs.' Mem. Supp. Mot. Protective Order, at 12, Docket No. 181-2.  Conversely, Plaintiff argues that he has not voluntarily withdrawn his membership, or been expelled or

**Memorandum Decision and Order - Page 14**

suspended from the Employee Association.  Pl.'s Resp. to Employee Defs.' Mot., at 9, Docket No. 194; Pl.'s Resp. to WinCo Defs.' Mot., at 8, Docket No. 195.

Defendants have not argued that Plaintiff was expelled or suspended from his membership in the Employee Association.  Their argument that Plaintiff is no longer a member of the Employee Association hinges on his voluntary membership withdrawal.  Although relatively few LMRDA cases have concerned voluntary withdrawal of union membership, courts generally construe member resignations narrowly in union cases.  *Basilicato v. Int'l Alliance of Theatrical Stage Employees and Moving Motion Picture Machine Operators of the U.S. and Can.*, 479 F. Supp. 1232, 1243 (D. Conn. 1979); *see also Int'l Bhd. of. Broilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Local Lodge 714*, 696 F. Supp. 391, 393 (N.D. Ill. 1988) (requiring withdrawal by clear manifestation of intent to voluntarily terminate union membership where union constitution lacks resignation or disaffiliation provisions).

As stated above, Plaintiff argues that he has not voluntarily withdrawn his membership in the Employee Association.  Pl.'s Resp. to Employee Defs.' Mot., at 9, Docket No. 194; Pl.'s Resp. to WinCo Defs.' Mot., at 8, Docket No. 195.  His contention is further supported by the fact that he seeks reinstatement as a WinCo employee in his prayer for relief.  *See* Second Am. Compl., at 48, Docket No. 165-2.  The Court has not been provided with any evidence that an Employee Association member's failure to exhaust its internal dispute resolution procedures results in a voluntary withdrawal or termination of membership.  In evaluating Plaintiff's scope of discovery, the Court finds that Plaintiff is a current member of the Employee Association.  Also, as agreed to by the parties, Plaintiff's membership in the Employee Association started on April 30, 1999, when he was hired at WinCo Store No. 1.

**Memorandum Decision and Order - Page 15**

(b)      Scope of discovery for Plaintiff's 29 U.S.C. § 501 claim.

The LMRDA outlines fiduciary duties of union officials, and permits union members to

sue on behalf of the union for breach of those duties in 29 U.S.C. § 501. *O'Hara v. Teamsters*

*Union Local # 856*, 151 F.3d 1152, 1161 (9th Cir. 1998). Standing to bring such claims is stated

as follows:

> When any . . . representative of any labor organization is alleged to have violated . . . [§
> 501(a)] . . . and the labor organization or its governing board or officers refuse or fail to
> sue or recover damages . . . or other appropriate relief within a reasonable time *after
> being requested to do so by any member of the labor organization, such member may sue*
> such . . . representative . . . to recover damages or . . . other appropriate relieve *for the
> benefit of the labor organization*.

29 U.S.C. § 501(b) (emphasis added). The Ninth Circuit has construed § 501(b) to expressly

provide that, "under the appropriate circumstances, a union member can file suit for appropriate

relief with respect to a violation of section 501(a)." *Brock v. Mazzola*, 794 F.2d 427, 430 (9th

Cir. 1986) (emphasis added). It recognizes, however, that § 501 claims are similar to

shareholder derivative actions because the relief obtained benefits the union as a whole rather

than the individual bringing the claim. *O'Hara*, 151 F.3d at 1161.

In Plaintiff's Second Amended Complaint, he seeks such relief "as the Court deems just

and equitable as to any and all causes of action, including, but not limited to, . . . a declaratory

judgment that Defendants . . . have violated the LMRDA . . . and/or have breached (or

unlawfully assisted in the breach of) fiduciary and/or agency duties; and, affirmative or

injunctive relief as to any and all of those violations, as appropriate." Second Am. Compl., at

48, Docket No. 165-2.

Since Plaintiff seeks declaratory and injunctive relief which could inure to the benefit of

the Employee Association, the result, assuming the Employee Association has not complied with

§ 501, is that they do so in the future.  Although the Employee Association was not created until April 20, 2000, the Court will allow Plaintiff to conduct discovery concerning Defendants' alleged § 501 violations starting on October 5, 1998, when WinCo Store No. 1 opened.  This will allow Plaintiff to explore the preliminary negotiations that resulted in the creation of the Employee Association.  Also, because the Court has found that Plaintiff is still a current member, he has standing under § 501 to pursue discovery in this area until the present time.

Plaintiff's common law fiduciary claims against Defendants arise from his LMRDA fiduciary duty claims.  *See* Ninth Circuit Mem., at 2, Docket No. 125.  Thus, Plaintiff's discovery regarding his common law fiduciary claims against Defendants is limited to the same extent as his § 501 claims.

(c)      Scope of discovery for Plaintiff's 29 U.S.C. § 411 and § 415 claims.

Plaintiff has also alleged that Defendants violated Title I of the LMRDA [29 U.S.C. §§ 411-415] under 29 U.S.C. §§ 411(a)(1), (a)(2), (a)(4), and 415.  Second Am. Compl., at 12-14, Docket No. 165-2.  Each of these sections confers rights only on members of a labor organization.  *See* 29 U.S.C. § 411(a)(1) ("Every *member* of a labor organization shall have equal rights and privileges . . .") (emphasis added); 29 U.S.C. § 411(a)(2) ("Every *member* of any labor organization shall have the right to meet and assemble freely with other members . . .") (emphasis added); 29 U.S.C. § 411(a)(4) ("No labor organization shall limit the right of any *member* thereof to institute an action in any court . . .") (emphasis added); 29 U.S.C. § 415 ("Every labor organization shall inform its *members* concerning the provisions of this chapter.") (emphasis added).

Unlike § 501(b), which limits relief to a labor organization, any person whose Title I

**Memorandum Decision and Order - Page 17**

rights have been violated may bring a civil action in a United States district court for relief.  *See* 29 U.S.C. § 412.  Thus, Plaintiff's §§ 411 and 415 are brought individually, rather than on behalf of the Employee Association.

Plaintiff's discovery concerning Employee Association Defendants' alleged §§ 411 and 415 violations is irrelevant for the time period before his membership in the Employee Association started.  As the parties agree, Plaintiff has been a member of the Employee Association since April 30, 1999, when he was hired by WinCo Store No. 1.  Although Plaintiff is still a member of the Employee Association, he has not asserted any active involvement as a member since January 18, 2002.  Thus, it is difficult to imagine how Plaintiff could have been individually harmed by any violations of §§ 411 and 415 by Employee Association Defendants after that time.  The Court, however, will extend the relevant period of Plaintiff's discovery relating to Employee Association Defendants' alleged §§ 411 and 415 violations to August 15, 2002, when Plaintiff first brought this action.

**C.**    **Discovery of WinCo Defendants' indemnification, and payment of defense cost for claims asserted against WinCo employee associations.**

(1)    WinCo Defendants' indemnification and payment of defense costs.

Plaintiff has proposed discovery seeking information on WinCo Defendants' indemnification, and/or payment of defense costs regarding Employee Association Defendants and other WinCo store employee associations.  *See* Ex. A-Q WinCo Defs.' Mem. Supp., Docket No. 181-3, Ex. M; Employee Defs.' Mem. Supp. Mot. Protective Order, Docket No. 183-4, Ex. A.  The Court finds that Plaintiff's requests concerning WinCo Defendants' payments of any WinCo employee association defense costs are relevant primarily to his RICO claims.  The geographic and temporal scope of any such discovery is therefore limited by the scope of

**Memorandum Decision and Order - Page 18**

Plaintiff's RICO claims as discussed earlier.

WinCo Defendants have already stated that they never indemnified Employee Association Defendants within the geographic and temporal scope of discovery for Plaintiff's RICO claims.  Ex. A-Q WinCo Defs.' Mem. Supp., at 75, Docket No. 181-3, Ex. Q.  WinCo Defendants also disclosed that they are paying Employee Association Defendants' legal fees in this case pursuant to an agreement.  *Id.*  They noted, however, that to their knowledge, no other employee or ex-employee had asserted a claim against Employee Association Defendants within the temporal scope of discovery concerning Plaintiff's RICO claims.  *Id.*  The Court finds that this statement fulfills Defendants' discovery obligations concerning WinCO Defendants' payment of employee association defense costs in this case at this time.  Plaintiff is restricted from any further discovery on this issue unless he successfully expands the geographic and temporal scope of discovery on his RICO claims through a motion to modify this protective order.

> (2)  Detailed information concerning Defendants' representation.

Plaintiff also seeks information regarding bills, billing documents, and representation agreements between Employee Association Defendants and Sasser & Inglis, P.C., or any other law firm.  Ex. A-Q WinCo Defs.' Mem. Supp., Docket No. 181-3, Ex. M; Employee Defs.' Mem. Supp. Mot. Protective Order, Docket No. 183-4, Ex. A.  Defendants argue that any such information is protected under the attorney-client privilege.  WinCo Defs.' Reply to Pl.'s Resp., at 6-7, Docket No. 211; Employee Defs.' Reply to Pl.'s Resp., at 6-9, Docket No. 213.

The Ninth Circuit has stated that communications between attorney and client that concern "the identity of the client, the amount of the fee, the identification of payment by case

file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). It clearly held, however, that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Id.* Thus, Plaintiff's discovery seeking detailed information of bills, billing documents, and agreements between Employee Association Defendants and their attorney falls within the attorney-client privilege and is prohibited.

Further, it is clear that Sasser & Inglis, P.C. has represented Employee Association Defendants *after* this case was filed for purposes of this litigation. Thus, Plaintiff's argument that the crime-fraud exception allows him to pierce the attorney-client relationship is to no avail. There is absolutely no evidence that prior to this lawsuit the law firm ever counseled the Employee Association Defendants to engage or participate in some sort of fraud. For the same reason, Plaintiff fails in his argument that the *Garner* exception to the attorney-client privilege applies in this case. Also, as Plaintiff concedes, the Ninth Circuit has never affirmatively applied the *Garner* exception.

In any event, WinCo Defendants have already disclosed all information relevant to Plaintiff's claims in their statement concerning the indemnification and payment of defense costs for Employee Association Defendants. Plaintiff's requests seeking detailed information from the bills, billing documents, and agreements between Employee Association Defendants and their attorney is protected and the fact that such a relationship exists has already been acknowledged.

**Memorandum Decision and Order - Page 20**

**D.**     **Specific issues concerning the scope of Plaintiff's discovery beyond the general scope limitation.**

In addition to the general scope limitations discussed above, the Court has made the following findings concerning Defendants' specific objections to requests made by Plaintiff for his proposed 30(b)(6) depositions.  *See* Pl.'s Resp. to WinCo Defs.' Mot., at 12-27, Docket No 195.  Although the Court specifically addresses Plaintiff's requests to WinCo Defendants, these findings also apply to Employee Association Defendants.  In the Court's view, the objections raised by WinCo Defendants were sufficient to cover Plaintiff's requests to Employee Association Defendants.

Request No. 24 is prohibited to the extent that it seeks information outside the scope of discovery for Plaintiff's claims under 29 U.S.C. § 501.

Request No. 42 is only allowed for the purpose of establishing Plaintiff's damages by showing what he would have been entitled to if he had remained a WinCo employee. Defendants' may prepare a summary sheet for the purpose of answering this request.

Request No. 43 is prohibited to the extent that it seeks information that is not related to WinCo's policy concerning the sale of alcohol, or any disciplinary policies that are not covered in the Employee Agreement.

Request Nos. 30 and 32 are prohibited to the extent that they seek information outside the scope of discovery for Plaintiff's claims under 29 U.S.C. § 501.

Request No. 49 is prohibited because it is irrelevant to Plaintiff's claims.

Request No. 50 is only allowed for the purpose of establishing Plaintiff's damages by showing what he would have been entitled to if he had remained a WinCo employee. Defendants' may prepare a summary sheet for the purpose of answering this request.

Request No. 51 is prohibited because it is irrelevant to Plaintiff's claims.

Request No. 54 is prohibited to the extent that it seeks information outside the scope of discovery for Plaintiff's RICO claims.

Request No. 52 is prohibited because it is overly broad and unduly burdensome.

Request No. 53 is prohibited to the extent that it seeks information outside the scope of discovery for Plaintiff's RICO claims.

Request Nos. 56 and 57 are prohibited because they are overly broad and unduly burdensome.

Request No. 41 is prohibited to the extent that it seeks information outside the scope of discovery for Plaintiff's claims under 29 U.S.C. § 501.

Request No. 46 is prohibited except that Plaintiff may inquire as to documents produced.

Request No. 47 is prohibited except that Plaintiff may inquire as to Defendants' defenses in this action.

Request No. 55 is prohibited except that Plaintiff may seek information regarding WinCo Store No. 1, during the time prior to August 15, 2002 when Plaintiff filed his Complaint.  Also, Plaintiff conceded at the January 31, 2008 hearing that he will not seek information regarding corresponding pay rates.

Request No. 58 is prohibited except that Plaintiff may seek information regarding WinCo Store No. 1, during the time prior to August 15, 2002 when Plaintiff filed his Complaint.

Request Nos. 26-28, 33, 39, 44, and 45 have already been addressed by the Court. Defendants have already provided all relevant information to Plaintiff regarding these requests.

Request No. 17 is moot because Plaintiff has already informed Defendants that he does

not expect them to be prepared to answer during their 30(b)(6) depositions.

**E.**     **Defendants' objection to Plaintiff's depositions of Messrs. Long and Cochell due to timeliness.**

WinCo Defendants seek to bar Plaintiff's proposed depositions of Bill Long and Roger Cochell because they were not noticed until December 5, 2007, which they consider too close to the December 17, 2007 discovery cut-off.  WinCo Defs.' Mem. Supp. Mot. Protective Order, at 27-28, Docket No. 181-2.  Although they do not move to bar Plaintiff's other proposed depositions, for which they acknowledge receiving notice on December 3, 2007, they seek scheduling of those depositions at dates and times mutually-agreeable to counsel, during normal business hours, and within a seven-hour limit for each deposition.  *Id*.  Plaintiff only challenges WinCo Defendants' motion to bar his proposed depositions of Messrs. Long and Cochell.  Pl.'s Resp. to WinCo Defs.' Mot., at 28, Docket No. 195.  He claims that WinCo Defendants were not noticed of the Long and Cochell depositions until December 5 because he thought they would be named as WinCo Defendants' 30(b)(6) deponents.  *Id*. at 31.  He further asserts that WinCo Defendants never notified him who their 30(b)(6) deponents would be.  *Id*. at 32.

Although Rule 30(b)(1) requires that reasonable notice of depositions be given, the court must determine what is reasonable based on the circumstances of a particular case.  *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005).  Courts should consider "the time between the notice and the deposition, with an eye towards preparation and travel."  *Id*.  The opposing party, however, has no basis to complain where it has concealed the identities of the witnesses until late in the game.  *Id*.  In *Sulfuric Acid*, the court also implied that notice of 10 business days would generally be deemed reasonable.  *Id*.

In this case, Plaintiff gave notice concerning the depositions of Messrs. Long and Cochell

just eight business days prior to the discovery cut-off.  Plaintiff argues that he thought Mr.

Cochell would be named as WinCo Defendants' 30(b)(6) deponent.  Aside from Plaintiff's

subjective belief in this area, the Court will allow this deposition because of Mr. Cochell's

former position as WinCo's Vice President of Labor and Human Resources and he signed the

Employee Agreement as WinCo's representative.  Conversely, the Court is not convinced that

Plaintiff expected Mr. Long, the former CEO, to act as their 30(b)(6) deponent or that he has

sufficient knowledge of the relevant issues in this case to require his deposition.  If Plaintiff

discovers information that Mr. Long has information that is relevant to the issues of his case or

likely to lead to relevant evidence, this Court will consider scheduling his deposition.

**F.**     **Plaintiff's motion for protective order.**

Plaintiff seeks a protective order on his answers and responses to Defendants' written

discovery until completion of their outstanding depositions.  Pl.'s Mot. Protective Order, at 2,

Docket No. 187.  He claims that Defendants did not appear for any of their noticed depositions

and that they unreasonably moved to protect portions of them.  *Id.*  Based on these allegations,

he argues that it is unfair to require his response before Defendants' noticed depositions have

been completed.  *Id.*  WinCo Defendants counter that Plaintiff has not met his burden of showing

a particular and specific demonstration of fact that a protective order is necessary.  WinCo Defs.'

Resp. to Pl.'s Mot., at 3, Docket No. 199; *see also Terra Int'l, Inc.*, 134 F.3d at 306.  They also

note that  "unless the court orders otherwise for the parties convenience . . . and in the interests

of justice: (A) methods of discovery shall be used in any sequence; and (B) discovery by one

party does not require any other party to delay its discovery."  Fed. R. Civ. P. 26(d)(2).

Plaintiff's motion for a protective order is denied because he has not specifically shown a

reason that it would be necessary.  Because the Court finds merit in Defendants' motions for

protective orders, it does find it unreasonable that Defendants did not appear for Plaintiff's

scheduled depositions.

### III.
### Plaintiff's Counsel as Expert Witness.

The Court addressed Defendants' motion to bar Plaintiff's counsel, Mr. Schwarzkopf,

from acting as an expert in this case at the hearing on January 31, 2008.  Although the Court held

that Mr. Schwarzkopf cannot act as both Plaintiff's expert witness and trial counsel, it granted

Plaintiff 10 days to propose another attorney to act as Plaintiff's attorney at trial.  Despite being

directed by the Court to respond within 10 days, Plaintiff has neither proposed another attorney

to act as trial counsel in this action, or notified the Court that Mr. Schwarzkopf will not be acting

as his expert witness.  The Court will grant Defendants' motion to strike Mr. Schwarzkopf as his

expert witness.

Because the Court has barred Plaintiff's only proposed expert witness in this trial,

Employee Association Defendants' motion for an extension of time to rebut Plaintiff's expert is

moot.

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      WinCo Defendants' Motion for Protective Order (Docket No. 181) is hereby

GRANTED in part and DENIED in part.

2)      Employee Association Defendants' Motion for Protective Order (Docket No. 183)

is hereby GRANTED in part and DENIED in part.

3)      Plaintiff's Motion for Protective Order (Docket No.187) is hereby DENIED.

Plaintiff shall respond to Defendants written discovery within twenty (20) days from the date of

this Order.

4)      WinCo Defendants' Motion to Strike Plaintiff's Expert Witness (Docket No. 173)

is hereby GRANTED.

5)      Employee Association Defendants' Motion for Extension of Time (Docket No.

175) is hereby declared MOOT.

DATED: February 27, 2008

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge